UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X
                                                    :
CARLOS JOSE ZAVALA VELASQUEZ,         :
                              Petitioner,      :
                                                    :            20 Civ. 4328 (LGS)
                  -against-                      :            15 Crim. 174-5 (LGS)
                                                    :
UNITED STATES OF AMERICA,                :            **OPINION & ORDER**
                              Respondent.   :
                                                    :
------------------------------------------------------------X

LORNA G. SCHOFIELD, District Judge:

      Pro se Petitioner Carlos Jose Zavala Velasquez brings a petition (the "Petition") for a writ of habeas corpus pursuant to 28 U.S.C. § 2255.  Petitioner moves to vacate, set aside or correct his sentence due to the alleged ineffective assistance of counsel.  For the following reasons, the Petition is denied.

I.      **BACKGROUND**

      Petitioner was a high-ranking member of the Honduran National Police (the "HNP").  According to the Presentence Investigation Report prepared by the Probation Office, Petitioner used his position in the HNP to facilitate two separate conspiracies to transport cocaine from Honduras to the United States.  First, between at least 2009 and 2012, Petitioner helped facilitate drug trafficking activities of an organization headed by Hector Emilio Fernandez Rosa.  Petitioner provided the organization with information about Honduran law enforcement operations that enabled the organization to plan its routes for transporting cocaine out of Honduras.  Second, in 2014, Petitioner participated in a drug trafficking operation for two Mexican drug traffickers who were also confidential sources (the "Sources") of the United States Drug Enforcement Agency (the "DEA").

On June 29, 2016, Petitioner was first charged in the United States in a superseding indictment (the "Indictment") along with five other HNP officers.  Petitioner was charged in two counts with conspiracy to engage in drug trafficking and a related firearms charge from around 2004 to 2014.  Shortly thereafter, Petitioner met with DEA agents in Honduras and claimed that his conduct underlying the Indictment was for investigative purposes at the direction of the HNP.  Petitioner also claimed that his earlier involvement with Fernandez Rosa's organization was likewise for the HNP.  Petitioner ultimately self-surrendered to DEA agents in Honduras, signed an agreement to travel voluntarily to the United States (the "Surrender Agreement") and was arraigned in the Southern District of New York.

On August 9, 2016, Howard R. Leader entered his appearance to represent Petitioner, replacing prior appointed counsel.  In April 2017, Mr. Leader provided the Government with documents and an audio recording, and in May 2017, he met with the Government, all to substantiate Petitioner's claim that his conduct charged in the Indictment was a result of directives from Honduran law enforcement.  In June 2017, Petitioner and the Government reached a plea agreement in which Petitioner agreed to plead to one count, charging him with participating in a drug trafficking conspiracy to import cocaine into the United States from around 2009 to 2012, i.e., the Fernandez Rosa conspiracy described above, and not the conspiracy to aid the Sources.  On June 15, 2017, Defendant waived indictment and pleaded guilty before Magistrate Judge James Francis to a superseding information (the "Information") as specified in the plea agreement.

Pursuant to the plea agreement, the recommended sentencing range under the United States Sentencing Guidelines ("Sentencing Guidelines" or "Guidelines") was 210 to 262 months, based on an offense level of 37 and criminal history category of I.  The Probation Department in

2

the Presentence Investigation Report characterized Petitioner as coherent during the presentence interview, even though Petitioner noted that he had been diagnosed with post-traumatic stress disorder ("PTSD") in Honduras.  The Probation Department recommended a Guidelines sentence of 210 months.  The Government also requested a sentence within the stipulated Sentencing Guidelines range.

Petitioner's counsel requested a sentence of time served.  In addressing the 18 U.S.C. § 3553(a) sentencing factors, Petitioner's counsel drew attention to Petitioner's personal history and circumstances, including his significant contributions to the HNP, his mental health issues stemming from PTSD and a lengthy narrative explaining that his involvement with the no-longer-charged 2014 Sources conspiracy was at the behest of Honduran law enforcement.

On June 26, 2018, Petitioner was sentenced to a below-Guidelines sentence of 144 months, followed by three years of supervised release.  Before imposing sentence, the Court reallocuted Petitioner, explaining that it was taking Petitioner's guilty plea again "in an abundance of caution . . . to satisfy myself that you are pleading guilty because you are guilty." Petitioner confirmed to the Court that his PTSD was not impacting his decision-making, that his judgment was not impaired and that he was "okay to make the decision about pleading guilty." Petitioner was careful in his responses to the Court's questions, which were based on the Government's allegations; he consulted with his counsel, clarified some questions and flatly denied others.  Petitioner ultimately admitted that he had agreed "to help in the distribution and transportation of drugs intended for the United States" by providing "information about where law enforcement had security checks," and that Petitioner knew when he "provided this information about the law enforcement checkpoints" that it was "wrong" and "against the law."

Petitioner also admitted that the drugs involved were at least 450 kilograms of cocaine. The Court accepted his plea.

In determining Petitioner's sentence, the Court weighed Petitioner's mental health history, his service to the HNP, the alleged rampant corruption in Honduran law enforcement, his pre-conviction prison conditions and his family situation against Petitioner's "extremely serious violation of the law." The Court also noted that the sentence was based solely on Petitioner's participation in the Fernandez Rosa conspiracy, which was charged in the Information, and not on any alleged participation in the Sources conspiracy, which was not.

Petitioner filed an appeal and then, on the advice of counsel, withdrew it. In the plea agreement, Petitioner agreed that he would not appeal or collaterally challenge any sentence within or below the stipulated Guidelines range, except for claims of ineffective assistance of counsel. Petitioner filed a pro se § 2255 motion to vacate his sentence on the ground of ineffective assistance of counsel. The next month, Petitioner filed an amended § 2255 motion. These motions are addressed collectively.[1]

## II.   LEGAL STANDARD

### A.   § 2255 Challenge and Hearing

A federally incarcerated individual may move to vacate, set aside or correct a sentence on four grounds pursuant to 28 U.S.C. § 2255:

(1) that the sentence was imposed in violation of the Constitution or laws of the United States, or (2) that the court was without jurisdiction to impose such

---

[1] Petitioner raises arguments for the first time in his reply brief. Courts generally do not address issues raised for the first time in a reply brief, even for pro se litigants. *See McBride v. BIC Consumer Prod. Mfg. Co.*, 583 F.3d 92, 96 (2d Cir. 2009); *Farmer v. United States*, No. 12 Crim. 758, 2017 WL 3448014, at *3 (S.D.N.Y. Aug. 10, 2017) (collecting cases). Nevertheless, because the Petition is denied and the Government had an opportunity to respond, these new arguments are addressed below.

sentence, or (3) that the sentence was in excess of the maximum authorized by law, or (4) is otherwise subject to collateral attack.

*United States v. Hoskins*, 905 F.3d 97, 102 (2d Cir. 2018) (quoting 28 U.S.C. § 2255(a)); *accord Zelaya-Romero v. United States*, No. 15 Crim. 174, 2023 WL 3001871, at *2 (S.D.N.Y. Apr. 19, 2023).[2]  In § 2255 proceedings, a petitioner bears the burden of proof by a preponderance of the evidence.  *See Triana v. United States*, 205 F.3d 36, 40 (2d Cir. 2000); *accord Amato v. United States*, 763 F. App'x 21, 24 (2d Cir. 2019) (summary order).  "If it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion."  Rules Governing § 2255 Proceedings for the United States District Courts, Rule 4(b).

"In ruling on a motion under § 2255, the district court is required to hold a hearing 'unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief.'"  *Gonzalez v. United States*, 722 F.3d 118, 130 (2d Cir. 2013) (quoting 28 U.S.C. § 2255(b)); *accord Ortiz-Correa v. United States*, No. 17 Crim. 737, 2023 WL 2504731, at *3 (S.D.N.Y. Mar. 14, 2023).  "To warrant a hearing, the motion must set forth specific facts supported by competent evidence, raising detailed and controverted issues of fact that, if proved at a hearing, would entitle [the petitioner] to relief."  *Gonzalez*, 722 F.3d at 131; *accord Ortiz-Correa*, 2023 WL 2504731, at *3.

A pro se litigant's papers must be construed liberally "to raise the strongest arguments they suggest."  *Green v. Dep't of Educ. of N.Y.C.*, 16 F.4th 1070, 1074 (2d Cir. 2021).  Nonetheless, "pro se status does not exempt a party from compliance with relevant rules of procedural and substantive law."  *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d

---

[2] Unless otherwise indicated, in quoting cases, all internal quotation marks, footnotes and citations are omitted, and all alterations are adopted.

Cir. 2006); *accord McKenzie-Morris v. V.P. Recs. Retail Outlet, Inc.*, No. 22 Civ. 1138, 2023 WL 5211054, at *5 (S.D.N.Y. Aug. 13, 2023).

    **B.**    **Procedural Default**

    In challenging his sentence here under § 2255, Petitioner is limited to arguing ineffective assistance of counsel (1) by his plea agreement which bars any challenge to his conviction or sentence except for claims of ineffective assistance of counsel, provided he was sentenced within or below the recommended Guidelines range, which he was, and (2) by the doctrine of procedural default, which generally bars arguments not previously raised on appeal, except for claims of ineffective assistance of counsel.  *See Harrington v. United States*, 689 F.3d 124, 129 (2d Cir. 2012); *accord Nina v. United States*, 12 Crim. 322, 2022 WL 997024, at *2 (S.D.N.Y. Mar. 31, 2022).

    Petitioner implicitly argues that these limitations do not apply because the plea agreement was procured improperly and because of exceptions to the procedural default rule (i.e., because he received ineffective assistance about whether to appeal and his "actual innocence").  This decision does not address these arguments because the substantive issues underlying Petitioner's claims of ineffective assistance -- i.e., his public authority defense, the Court's jurisdiction and his competency to plead guilty -- are fully addressed below in the context of Petitioner's ineffective assistance claims.  In other words, none of Petitioner's arguments are rejected because of his plea agreement or his failure to raise them on appeal.

    **C.**    **Ineffective Assistance of Counsel**

    Petitioner alleges that his sentence was imposed in violation of the Constitution because of the ineffective assistance of his defense counsel.  The Sixth Amendment right to counsel guarantees "the right to the *effective* assistance of counsel."  *Strickland v. Washington*, 466 U.S.

668, 685-86 (1984) (emphasis added).  A claim of ineffective assistance of counsel may be raised for the first time in a collateral proceeding under § 2255 "whether or not the petitioner could have raised the claim on direct appeal." *Harrington*, 689 F.3d at 129.

"There is a strong presumption that counsel's conduct fell within the wide range of professional assistance." *Weingarten v. United States*, 865 F.3d 48, 52 (2d Cir. 2017).  "To overcome that presumption, a petitioner must establish two elements.  First, the petitioner must show that counsel's performance was deficient by demonstrating that the representation 'fell below an objective standard of reasonableness.'" *Id.* (quoting *Strickland*, 466 U.S. at 688).  The first prong of *Strickland* sets a "high bar" for defendants because defense counsel's strategic and adequately informed decisions are given a "presumption of effective performance." *United States v. Nolan*, 956 F.3d 71, 79 (2d Cir. 2020).  To rebut this presumption, Petitioner must show that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687.

Second, the petitioner must show that counsel's deficient representation was prejudicial to the defense by establishing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Reasonable probability means "a probability sufficient to undermine confidence in the outcome." *Id.*

## III.    DISCUSSION

The Petition under 28 U.S.C. § 2255 to vacate, set aside or correct Petitioner's criminal sentence is brought on the basis of ineffective assistance of counsel.  Petitioner argues that counsel's performance was constitutionally deficient because of the failure to:  (1) pursue his public authority defense, (2) argue that the Court lacked jurisdiction over Petitioner's case and

(3) request a competency hearing before sentencing.  As to each argument, the Petition fails to satisfy the *Strickland* test.  The Petition is therefore denied.

### A.      Public Authority Defense

Petitioner argues that the assistance of defense counsel was constitutionally deficient regarding the public authority defense because counsel advised Petitioner to plead guilty even though his conduct was sanctioned by the HNP.  The so-called "public authority defense," as relevant here, "depends on the proposition that the defendant's actions, although ostensibly in violation of some statute, were in fact lawful because he was authorized by the government to do those acts."  *United States v. Giffen*, 473 F.3d 30, 39 (2d Cir. 2006); *accord United States v. Thomas*, 214 F. Supp. 3d 187, 192 (E.D.N.Y. 2016).  Specifically, Petitioner alleges that defense counsel was deficient by failing to investigate and call witnesses to support his defense and by advising Petitioner to accept a plea agreement based on erroneous legal advice that he could be criminally liable for actions sanctioned by the HNP.  These arguments fail both prongs of the *Strickland* test.

### 1.      Counsel's Investigation of the Defense Did Not Fall Below an Objective Standard of Reasonableness.

Defense counsel's investigation of Petitioner's public authority defense did not fall below an objective standard of reasonableness.  The duty to investigate requires counsel "to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary."  *Strickland*, 466 U.S. at 691; *accord Weingarten v. United States*, 700 F. App'x 43, 45 (2d Cir. 2017) (summary order).  "[A]s a general matter, when there is reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable."  *Greiner v. Wells*, 417 F.3d 305, 321 (2d Cir. 2005); *accord United States v. Cureton*, No. 18-3789-CR, 2022 WL

17726842, at *3 (2d Cir. Dec. 16, 2022) (summary order).  "Post-hoc complaints about the strategy or tactics employed by trial counsel, or complaints that trial counsel did not conduct a sufficiently vigorous pre-trial investigation, are typically found to be insufficient to satisfy *Strickland*."  *Crews v. Miller*, No. 19 Civ. 2091, 2019 WL 4861421, at *16 (E.D.N.Y. Sept. 30, 2019).

Counsel interviewed and obtained evidence from witnesses about an alleged public authority defense.  On April 5, 2017, counsel produced (1) an affidavit from a Honduran attorney, (2) an audio recording of a meeting among Petitioner, that attorney and Commisario Rigoberto Osguera Mass of the HNP (a superior, but not Petitioner's supervisor at the time, to whom he reported his recruitment by co-conspirators) and (3) text messages between Petitioner and Osguera Mass.  Counsel then negotiated a plea agreement that narrowed the charges against Petitioner to the Fernandez Rosa conspiracy and the period 2009 to 2012.  The Information did not include the agreement and meetings in 2014 to transport cocaine for the two DEA Sources, in which Petitioner asserted he had participated under color of law.

Petitioner alleges that counsel failed to investigate four witness affidavits supporting Petitioner's public authority claims.  These affidavits are legally irrelevant to the challenge to Petitioner's sentence as they were sworn to in July and August 2018, after Petitioner was sentenced in June 2018.  The affidavits are also factually irrelevant to Petitioner's public authority defense.  None of the affidavits speak to that defense.  Instead, they suggest that Petitioner lacked any involvement with the Fernandez Rosa operation whatsoever, not that he was involved but on behalf of Honduran law enforcement.  Even in that regard, defense counsel made a reasonable strategic decision not to follow up on the affidavits because they merely assert, second-hand, that Fernandez Rosa and his accomplice, Diaz Morales, did not know

Petitioner.  A defendant need not know all or any particular members of a conspiracy in order to be guilty as a co-conspirator.  *See, e.g.*, *United States v. Khalupsky*, 5 F.4th 279, 288 (2d Cir. 2021) (two individuals "need not have known one another to be co-conspirators").  Petitioner successfully allocuted to conspiracy to commit drug trafficking when he confirmed at his sentencing that he "c[a]me to an agreement with certain people, regardless of whether it was with Mr. Fernandez Rosa, to help in the distribution and transportation of drugs intended for the United States."

## 2. Claim that Counsel Did Not Explain the Defense is Contradicted by the Record.

Petitioner argues that his counsel was deficient by advising Petitioner to accept a plea agreement based on erroneous legal advice that he could be criminally liable for actions sanctioned by the HNP.  The effectiveness of a counsel's plea-bargaining guidance is evaluated under the "standard of attorney competence" outlined in *Strickland*.  *See Hill v. Lockhart*, 474 U.S. 52, 58 (1985).  For any plea offer, "counsel must communicate to the defendant the terms of the plea offer and should usually inform the defendant of the strengths and weaknesses of the case against him, as well as the alternative sentences to which he will most likely be exposed." *Purdy v. United States*, 208 F.3d 41, 45 (2d Cir. 2000); *accord Maetus v. United States*, No. 18 Civ. 638, 2020 WL 1046624, at *7 (S.D.N.Y. Mar. 4, 2020).

Petitioner's argument -- in substance, that Petitioner was unaware of, and counsel did not explain, prior to Petitioner's guilty plea the availability of the defense -- is rejected because of overwhelming evidence to the contrary in the record.  After Petitioner surrendered, defense counsel repeatedly asserted that Petitioner had a public authority defense with respect to the 2014 operation for the Sources.  Defense counsel provided evidentiary material to the Government that counsel and Petitioner had gathered to support the public authority defense.  Counsel then

10

proffered that defense to negotiate a plea agreement, which Petitioner signed and endorsed at his change-of-plea hearing, and which eliminated the 2014 operation from the stipulated criminal conduct.  Counsel then spent seven pages of his sentencing submission discussing Petitioner's "color of authority defense" to the 2014 conduct before Petitioner was reallocuted and his guilty plea was accepted.

To the extent that Petitioner is arguing that counsel was deficient because he was successful in persuading the Government of Petitioner's public authority defense only as to the 2014 Sources conspiracy but not the earlier Fernandez Rosa conspiracy, that argument is without merit.  First, one might conclude that counsel's ability to eliminate even the 2014 conspiracy from the charges was an achievement.  While Petitioner's sentencing submission asserted that the public authority defense was the reason for the Government's narrowing of the charges, the Government appears to challenge the credibility of that defense even as to the 2014 conspiracy, stating that "while the defendant may have reported that he wanted to participate in the meeting with the Sources in an undercover capacity in 2014, he did virtually nothing that an honest law enforcement officer should do . . . ."  Many factors can influence the Government's plea-bargaining decisions.  Second, even assuming Petitioner's counsel made "miscalculations regarding the Government's willingness to negotiate a more favorable deal," those represent, "at best, strategic errors that are virtually unchallengeable."  *See Lake v. United States*, 465 F. App'x 33, 35 (2d Cir. 2012) (summary order); *accord United States v. Wilson*, 146 F. Supp. 3d 472, 480-81 (E.D.N.Y. 2015).

### 3. No Actual Prejudice Because No Reasonable Probability the Result Would Have Been Different.

Even if the record supported Petitioner's argument that defense counsel's conduct was objectively unreasonable, he cannot show the second prong of the *Strickland* test, "a reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

In guilty plea cases, the defendant must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Kovacs v. United States*, 744 F.3d 44, 51 (2d Cir. 2014); *accord Guzman v. United States*, 363 F. Supp. 3d 396, 399 (S.D.N.Y. 2019). This assessment "will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea," which will in turn "depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial." *Hill*, 474 U.S. at 59. "[W]here the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged," the prejudice inquiry will depend "on whether the affirmative defense likely would have succeeded at trial." *Id.*

It is complete conjecture that Petitioner somehow would have prevailed on his public authority defense at trial or in plea discussions if counsel had pursued the defense differently. This is not a case where counsel failed to present, for example, known mitigating evidence. *See, e.g.*, *Williams v. Taylor*, 529 U.S. 362, 395-97 (2000) (defense counsel's failure to produce mitigating evidence at sentencing). Petitioner has proffered no evidence that creates a "reasonable probability" that the public authority defense would have prevailed to defeat the Fernandez Rosa conspiracy charge. The evidence that Petitioner has produced in connection with that charge, including the four affidavits discussed above, does not support a public authority defense.

Only Petitioner's self-serving assertions of his working under "deep cover" support such a defense. To show prejudice, Petitioner "may not rely solely on his own, self-serving

statement." *See United States v. Bent*, 654 F. App'x 11, 13 (2d Cir. 2016) (summary order); *accord United States v. Key*, No. 12 Crim. 712-1, 2019 WL 2314693, at *3 (S.D.N.Y. May 31, 2019). Even Petitioner's assertions that he was acting under color of authority are contradicted by his own sworn statements at sentencing that he knew *at the time* that assisting the drug traffickers by providing them with law enforcement information was "against the law" and "wrong." Petitioner personally addressed the Court in his own letter prior to sentencing in which he stated that his conduct did not reflect "the principles that my parents taught me and also [were] not in accordance with the professional ethics and philosophy of the National Police." Petitioner's statements acknowledging his wrongdoing "carry a strong presumption of verity," and his "subsequent presentation of conclusory allegations" are subject to summary dismissal because they are unsupported by any specifics. *See Gonzalez*, 722 F.3d at 131; *accord Ingram v. United States*, No. 14 Crim. 760, 2020 WL 6323822, at *4 (S.D.N.Y. Oct. 28, 2020).

Petitioner's § 2255 motion does not "automatically entitle" him to a hearing, particularly when his assertions of ineffective assistance of counsel in presenting his public authority defense -- inadequate investigation, failure to advise and prejudice -- are "vague, conclusory, or palpably incredible." *See Gonzalez*, 722 F.3d at 130; *accord Mercedes v. United States*, No. 17 Crim. 419, 2024 WL 967191, at *2 (S.D.N.Y. Mar. 5, 2024).

### B.  Jurisdictional Arguments

Petitioner asserts ineffective assistance because defense counsel failed to contest the Court's jurisdiction over his case. Petitioner contends that the Court lacked jurisdiction because of (1) his public authority defense, (2) the circumstances of his surrender to the United States, (3) the original indictment, which did not name Petitioner's co-conspirators, and (4) the Information, which was the basis for Petitioner's guilty plea rather than an indictment. Counsel's decision not

to challenge the Court's jurisdiction on these grounds was reasonable as these arguments are legally incorrect.  Given the legal nature of these arguments, and the lack of any factual dispute, no hearing is necessary.

Even assuming that Petitioner plausibly could have asserted a public authority defense, that would not deprive the Court of jurisdiction.  The defense is not jurisdictional but instead is "an affirmative defense that is tried to the jury."  *See United States v. Doe*, 63 F.3d 121, 125 (2d Cir. 1995); *accord Thomas*, 214 F. Supp. 3d at 192 ("The defendant may present a public authority defense to the jury . . . .").

The events surrounding Petitioner's surrender to the United States also did not affect the Court's jurisdiction.  The Surrender Agreement states that Petitioner "decided -- voluntarily and without coercion or threats having been made to me by anyone -- to travel to the United States so that I can surrender voluntarily in the Southern District of New York and face the charges pending against me."  No law (including the various treaties cited in Petitioner's papers) supports the proposition that the Surrender Agreement deprived the Court of jurisdiction.  As to Petitioner's extradition arguments, the Surrender Agreement expressly waives "any right to extradition proceedings" and states that Petitioner "will travel to the United States voluntarily . . . without extradition."  Even if Petitioner's surrender was an extradition, he would not have standing to assert the violation of any treaty, including an extradition treaty.  *See Fed. Republic of Nigeria v. VR Advisory Servs., Ltd.*, 27 F.4th 136, 151 (2d Cir. 2022) ("Ordinarily, absent protest or objection by the offended sovereign, an individual has no standing to raise the violation of international law, including treaties . . . unless the treaty creates privately enforceable rights."); *United States v. Garavito-Garcia*, 827 F.3d 242, 246-47 (2d Cir. 2016)

(concerns about lack of standing to raise violation of international law "apply equally when a criminal defendant objects . . . based on the interpretation of an extradition treaty").

Petitioner's reply memorandum takes issue with the translation of the Surrender Agreement, which he signed and later initialed.  The agreement states, "This Waiver form was read to me in Spanish before I signed it."  Petitioner's argument is that the Court lacks jurisdiction because the Surrender Agreement "fails to qualify by whom [it] was allegedly interpreted."  Petitioner never asserts that the document was not translated or was not correctly translated.  Instead, he asserts that the following language in the Court Interpreters Act requires that the Surrender Agreement identify the translator and state his or her qualifications:  "United States Courts shall establish a program to facilitate the use of certified and otherwise qualified interpreters in judicial proceedings instituted by the United States."  28 U.S.C. § 1827(a).  This language by its terms does not apply because the Surrender Agreement was not signed in the context of a "judicial proceeding."  *See* 28 U.S.C. § 1827(j) ("The term 'judicial proceedings instituted by the United States' as used in this section refers to all proceedings, whether criminal or civil, including pretrial and grand jury proceedings . . . conducted in, or pursuant to the lawful authority and jurisdiction of a United States district court.").  Even if the statute did apply, nothing about it suggests that non-compliance would deprive a court of jurisdiction in a later judicial proceeding.  Importantly, Petitioner's argument is not that the Surrender Agreement was improperly translated or that it was not translated at all.  His real complaint is that, "[u]ltimately, this agreement was never voluntary because the link between what was read to Zavala and what he heard is missing."  This is not a jurisdictional infirmity.

Petitioner similarly raises no jurisdictional bar in asserting that the Information was defective because it charges Petitioner with a conspiracy but does not charge or name any co-

defendants.  A charging instrument is not required to name a defendant's co-conspirators, much less charge them.  *See Corbett v. United States*, No. 15 Civ. 1461, 2019 WL 4758340, at *8 n.12 (D. Conn. Sept. 30, 2019) ("[T]here is no requirement that the indictment name co-conspirators.").

Nor was counsel deficient by allowing Petitioner to plead guilty to an information rather than an indictment.  Petitioner agreed to the Information in his plea agreement.  In open court at his change-of-plea hearing, Petitioner was informed of his right to be indicted by a grand jury, signed a waiver of indictment agreeing to be charged in an information and orally confirmed his waiver.  The waiver is therefore effective and enforceable.  *See United States v. Bastian*, 770 F.3d 212, 218 (2d Cir. 2014); *accord Palmer v. United States*, No. 3 Crim. 132S, 2018 WL 3633249, at *3 (W.D.N.Y. July 31, 2018).  Petitioner has not suggested or shown any prejudice as a result of proceeding by information rather than indictment.  The dismissal of the Indictment, superseded by the Information, in any event had no impact on jurisdiction.

## C.    Competency Hearing

Defense counsel's decision to forgo requesting a competency hearing was not deficient, given the evidence of Petitioner's competence to plead guilty.  A district court is required to hold a competency hearing prior to sentencing "if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense."  18 U.S.C. § 4241(a).  "The standard for determining whether a defendant is competent to plead guilty is well settled:  the defendant must have (1) sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and (2) a rational as well as factual understanding of the

proceedings against him." *United States v. Geraldo*, No. 11 Crim. 1032-68, 2021 WL 230282, at *6 (S.D.N.Y. Jan. 21, 2021).  Relevant considerations in making this determination are psychiatric reports and the court's own assessment of "the defendant's demeanor during the proceeding."  *See United States v. DiMartino*, 949 F.3d 67, 71 (2d Cir. 2020).

Petitioner's words and demeanor at sentencing and the supporting documents show that Petitioner was competent to plead guilty.  Defense counsel submitted documents with his sentencing memorandum outlining Petitioner's mental health issues and maintained that such issues merited leniency in the sentence.  The supporting documents included a psychiatric evaluation of Petitioner conducted by Dr. Stephen Price roughly two months prior to sentencing. Dr. Price's report concluded that while Petitioner exhibited normal orientation during the evaluation, he was still experiencing some symptoms of PTSD.

At his change-of-plea hearing before Judge Francis, Petitioner denied being under the care of a psychiatrist or taking medication, alcohol or narcotics in the last forty-eight hours and agreed that he was feeling "all right" -- "That's correct.  I feel fine."  At his sentencing hearing before the District Judge, when asked how his PTSD might be impacting his decision-making at sentencing, Petitioner stated, "In terms of my spiritual well-being, I have been in touch with my family to be able to count with their support and also the support of my attorney.  So I am okay." After Petitioner was reallocuted and just before accepting his plea, the Court made the following findings:  "[O]n the basis of my review of the transcript of your guilty plea before Judge Francis, your responses to my questions just now, my observations of your demeanor, I am satisfied that you understand your rights and that you're waiving them knowingly and voluntarily, with an

understanding of the consequences of your plea . . . [and] that your plea is knowing, and voluntary . . . ."

Nothing in the record suggests that Petitioner was unable to consult with his counsel or understand the nature of the proceedings or their consequences.  Accordingly, nothing rebuts the presumption that counsel's decision to forgo a competency hearing "fell within the wide range of professional assistance."  *See Weingarten*, 865 F.3d at 52.  Similarly, the record does not support a finding of prejudice -- that if a competency hearing had been held the outcome of these proceedings would have been different.  In the absence of evidence raising a genuine factual dispute, no hearing is necessary.

Petitioner's remaining allegations of deficiency do not rebut the presumption that counsel's performance was reasonable.  *See Gonzalez*, 722 F.3d at 130.  Accordingly, Petitioner cannot establish deficient performance.

## IV.   CONCLUSION

For the reasons stated above, the Petition is **DENIED**.

As Petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue.  *See* 28 U.S.C. § 2253(c)(2); *Gray v. United States*, 980 F.3d 264, 265 (2d Cir. 2020).  The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this judgment on the merits would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal.  *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

The Clerk of the Court is respectfully directed to close the motion at Dkt. 442.

Dated: June 5, 2024
     New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE